————o————

JOHN CRAVENS, Respondent, vs. NATHAN GILLILAN, Appellant.

1. *Promissory note—Unauthorized signature, ratification of—Consideration.*— One whose signature has been attached to a note without his authority may ratify the signature. And no new consideration is necessary to validate the ratification.—(National Bank v. Gay, *post* p. 33 )

2. *Promissory note, execution of—Ratification—Evidence—Burden of proof.*— Where the execution of a note is denied, the *onus* is on plaintiff to show its execution by defendant or his ratification of it with full knowledge of the fact.—(See Nat'l Bank v. Gay, *post* p. 33.)

3. *Evidence—Instructions, giving of.*—When the evidence on a point is conflicting, the law bearing on it should be declared by appropriate instructions. (Nixon vs. Palmer, 8 N. Y. 398.)

*Appeal from Daviess Circuit Court.*

*Shanklin, Low & McDougal*, for Appellant.

I. A forgery cannot be ratified. (Sto. Ag., § 251a ; Ferry v. Taylor, 33 Mo. 323 ; Brook v. Hook, L. R., 6 Exch. 88 ; Collins v. Swan, 7 Robt. [N. Y.], 623 ; Williams v. Bagley, L. R. H. L. 200 ; See note to McHugh v. County of Schuylkill, 5 Am. R. 447) ; at least not without a new consideration. (McHugh v. County of Schuylkill, 67 Penn. [St.] 391 ; Negly v.

Lindsay, 67 Penn. [St.], 217 ; Decuir v. Lejeune, 15 La. Ann. 569.)

II. The remarks of the defendant did not amount to a ratification of the note. (Lancaster v. Baltzell, 7 Gill. & J. 472 ; Hull v. Huse, 10 Mass., 39.) The burden of proof was upon plaintiff, not only to establish the ratification, but to show that Nathan at the time had full knowledge that his name had been signed without his authority by Robert. (Clark v. Lyon Co., 7 Nevada, 75 ; Sto. Ag., §§ 324, 243 ; 1 Pars. N. & B. 101 ; Nixon v. Palmer, 8 N. Y. 398 ; Fletcher v. Dysart, 9 B. Mon. 413 ; Whitford v. Monroe, 17 Md. 135 ; Norton v. Ball, 43 Mo. 113 ; Moore v. Patterson, 28 Penn. [St.], 505.)

*M. Oliver*, *with Hicklin & Leopold*, for Respondent, cited Sto. Ag., § 251, note 1, and authorities cited ; also §§ 252, 253 ; 1 Pars. Cont., [6th Ed.,] 52, 53 and notes ; 1 Am. Lead. Cases, 589–593 ; Culver v. Ashley, 29 Mo. 387–389 ; 2 Gr. Ev., § 66.

SHERWOOD, Judge, delivered the opinion of the court.

Action on a note purporting to be executed to plaintiff by Robert L. Gillilan, Nathan Gillilan and Mary J. Clendennen. The suit was instituted against Robert L. Gillilan and the administrators of Mary J. Clendennen, but was dismissed as to them, and proceeded with against Nathan Gillilan alone. Nathan Gillilan denied the note under oath. The case was tried before the court without a jury. The evidence, as set out in the bill of exceptions, was as follows :

John Cravens, the plaintiff, testified : " I wrote the body of the note sued on, myself. Robert L. Gillilan signed all the names to it. Nathan Gillilan was not present. About a year ago I met the defendant here in Gallatin, spoke to him about the note in suit, and asked him if they had not better settle it. Told him whose names were on the note. He asked to see the note ; told him it was in bank. We started toward bank to see it, when defendant said, ' I will go and see Robert L. Gillilan about the note.' He left me, and when he returned in a short time, he said,

' It is Robert L.'s debt; it is all right; if you want the money we will get it for you; there is no necessity of having it probated against Mrs. Clendennen's estate.'  In August last, I started to go to defendant's home to see about this note.  On the way there I met defendant coming to town.  This was after Robert L.'s arrest.  Defendant asked me if I was going to his home; I told him I was; he then suggested that he would see me in town, and we returned together.  Nothing was said about the note at the time.  Some time after I got back to town, defendant came to my son's drug store and asked to see the note.  I showed it to him; he looked at it and said it was a forgery; that he had never signed the note.  This was the first time he had ever seen the note."

Cross-examination.  When Robert Gillilan obtained the money for which the note in suit was given he said it was for Mrs. Mary J. Clendennen.  Mrs. Clendennen was dead when I had the conversation with defendant, first referred to in my testimony, and Robert L. Gillilan was one of the executors of her will.  I spoke to defendant to see if they wished to take up the note, and have it probated against Mrs. Clendennen's estate.  When defendant returned, after seeing Robert L. Gillilan, he said, " Its Bob L.'s note; there's no necessity for having it probated against Mrs. Clendennen's estate; it is all right, if you want the money we will pay it."

Maro Thomas testified:  " About the last June term of the Circuit Court plaintiff and I were in the drug store together, when defendant came to the door and spoke to plaintiff saying, " Dr. Cravens, that note is all right; it was Robert L. Gillilan's debt."

Plaintiff being re-called stated that the conversation mentioned by Maro Thomas was the same conversation referred to in his testimony. .Plaintiff here offered the note in evidence and the defendant objected to its introduction for the reasons; that the execution of the note was not sufficiently established ; that the conversations of defendant in evidence did not amount to a ratification of the note; that the note was a forgery, as to defendant and Mrs. Clendennen; that it was not shown that defendant, at the

time of such conversations, knew all the material circumstances under which said note had been executed; that Robert L. Gillilan in signing said note did not assume to act as the agent of Nathan Gillilan; that the act of Robert L. Gillilan, in signing defendant's name to the note in suit did not bind defendant, because said Robert L. being an interested party, could not bind the defendant by signing his name as guarantor.

These objections were overruled and the note admitted in evidence, and the defendant duly excepted.

The defendant Nathan Gillilan testified as follows: "At last June Term of the Circuit Court I met plaintiff. He said to me, 'Hadn't you better fix up that note I have against Mrs. Mary J. Clendennen, so as to have it allowed against her estate?' I told him I knew nothing about it; that Robert L. Gillilan was executor of Mrs. Clendennen's will, and that I would see him, Robert L., about it. I went at once and saw Robert L. He told me the note was all right; that it was his, Robert L.'s debt; and that if Dr. Cravens wanted the money he would pay it. I then went to the drug store and told plaintiff that the note was all right; that it was Robert L.'s debt. I did not then know that my name was on the note. I never authorized Robert L. Gillilan to sign my name to the note in suit. The money was not gotten for my use. I never knew that my name was on the note in suit until plaintiff showed me the note, here in town, after the arrest of Robert L. Gillilan. Had heard it talked of here in town after his arrest, and after we got into town, the day I met plaintiff going to my house, I asked him to show me the note, which he did. When I saw the note in suit I told plaintiff I never signed it; that my name was forged, and that I would not pay the note. In the first conversation I had with plaintiff in June last, he did not tell me my name was on the note; he never offered to show me the note at that time, and I never knew my name was to the note, and never saw it until he showed it to me after Robert L. Gillilan's arrest."

This was all the evidence offered. The defendant asked the following declarations of law, all which were refused by the court.

**1.** If the court sitting as a jury, finds from the evidence that the name of Nathan Gillilan was signed to the note in suit by Robert L. Gillilan for money borrowed by said Robert for himself, or any other person than the defendant, Nathan Gillilan, the finding of the court must be for the defendant; 2. If the court finds from the evidence, that the signature of Nathan Gillilan to the note in suit was, and is, a forgery, then no subsequent ratification of said note by said Nathan Gillilan, not founded on a new and adequate consideration, will bind him; 3. That no ratification of the note in proof will bind defendant unless such ratification was made with full knowledge of all material facts, connected with the execution of said note; and the burden of proof is with the plaintiff to establish such knowledge; and unless the evidence shows that at the time when the conversation, in proof, between plaintiff and defendant took place, Nathan Gillilan knew that his name had been signed to said note by Robert L. Gillilan, the finding must be for defendant.

The plaintiff asked no declarations of law. The court found for plaintiff. The defendant filed a motion for a new trial and in arrest of judgment, which was overruled. He now brings the case here by appeal.

The principles enunciated in the 1st and 2nd declarations of law asked by defendant have been discussed at length in the case of The First National Bank of Trenton vs. Samuel Gay, *et al.*, decided at the present term. In the refusal of those declarations there was no error.

We pass now to the consideration of the defendant's third declaration. It is among the fundamentals of the law that the *onus probandi* lies on him who asserts the affirmative of the issue. When, under our practice, the defendant denies the execution of the note in suit, it devolves on the plaintiff to establish that which he has asserted in his petition, first, by showing that the defendant did in fact execute the instrument as alleged, or second, that subsequent to the execution of the instrument he adopted his name, placed there by some unauthorized hand, as his own signature; and in either event, the burden necessarily rests on the shoulders

of the plaintiff to establish, by evidence either direct or circumstantial, that what he has asserted in his petition is true. And as a matter of course, if he puts his case on the theory of ratification, he must show that the confirmatory act took place with full knowledge of all material facts on the part of him sought to be charged. In this case, if the testimony on the plaintiff's behalf is to be taken as true, there was a tendency therein to show that the defendant had adopted his son's act of signing as his own signature. But there was testimony also of a contrary effect; testimony which had a tendency to place the matter in a very different attitude and give it a wholly different coloring. Under these circumstances, the declaration referred to, asking as it did the assertion of obviously correct principles, should have been given. (Nixon vs. Palmer, 8 N. Y. 398, cas. cit.) It may have been that the result would have been unchanged had the declaration in question been given; but that is no concern of ours. It is enough to say that the defendant had the legal right to have the law correctly declared, and of that legal right we will not deprive him.

It follows, that the judgment must be reversed and the cause remanded; Judge Vories absent, the other judges concur.

